IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| EDWARD TYLER KITCHENS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 2:21-CV-635-RAH-CSC ) |
| LARRY NIXON, et al., | ) ) |
| Defendants. | ) |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.   INTRODUCTION**

Plaintiff Edward Tyler Kitchens, an inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action alleging that, while incarcerated at the Autauga County Metro Jail in August 2021, Defendants Larry Nixon and Officer George violated his constitutional rights after he was attacked by another inmate. Doc. 1. As relief, he seeks monetary damages. *Id*. at 5.

On September 29, 2021, the Court issued an Order directing Defendants to file a Special Report addressing Plaintiff's claims. Doc. 5. On March 17, 2022, Defendants filed a joint Special Report (Doc. 27), in which they move for summary judgment and provide supporting evidentiary materials (Docs. 27-1 through 27-4). On March 21, 2022, the Court issued another Order directing Plaintiff to file a response to Defendants' filings with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 28. Plaintiff filed two responsive filings. Docs. 29, 30.

The Court previously notified the parties that "the Court may at any time [after expiration of the time for Plaintiff to file a response] and without further notice to the

parties (1) treat the Special Report and any supporting evidentiary materials as a motion to dismiss or motion for summary judgment, whichever is proper, and (2) rule on the dispositive motion, in accordance with the law, after considering any response filed [by Plaintiff]." Doc. 28 at 2. Pursuant to that notice, the undersigned will now treat the Special Report as a motion to dismiss and recommend that the motion be granted for Plaintiff's failure to exhaust his administrative remedies prior to filing suit.[1]

## II.   THE EXHAUSTION REQUIREMENT

The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).[2] Exhaustion of all available administrative remedies is a mandatory precondition to suit. *See Booth v. Churner*, 532 U.S. 731, 739 (2001). The exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "The requirement is not subject to waiver by a court, or futility or inadequacy exceptions." *Mathews v. Walters*, No. 3:23-CV-10264, 2023 WL 8881170, at *2 (N.D. Fla. Dec. 4, 2023) (citing *Booth*, 532 U.S. at 741 n.6).

---

[1] Defendants request that the Court treat their Special Report as a motion for summary judgment. Doc. 27 at 17. However, "an exhaustion defense . . . should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment." *Bryant v. Rich*, 530 F.3d 1368, 1374–75 (11th Cir. 2008) (internal quotations and citations omitted).

[2] "42 U.S.C. § 1997e, which is designed to deter the filing of frivolous litigation against prison officials, applies to both pretrial detainees and convicted prisoners." *Kingsley v. Hendrickson*, 576 U.S. 389, 402 (2015).

To properly exhaust one's administrative remedies, an inmate must "us[e] all steps" in the administrative process and comply with all "deadlines and other critical procedural rules." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006). Thus, if an inmate has filed "an untimely or otherwise procedurally defective administrative grievance or appeal," he has not properly exhausted his administrative remedies. *Id.* at 83–84. If an inmate has failed to properly exhaust his available administrative remedies before filing suit, the Court *must* dismiss the action. *See Chandler v. Crosby*, 379 F.3d 1278, 1286 (11th Cir. 2004).

Deciding a motion to dismiss for failure to exhaust administrative remedies involves two steps. *See Turner v. Burnside*, 541 F.3d 1077, 1082 (11th Cir. 2008).

> First, the court looks to the factual allegations in the defendant's motion to dismiss and those in the plaintiff's response, and if they conflict, takes the plaintiff's version of the facts as true. If, in that light, the defendant is entitled to have the complaint dismissed for failure to exhaust administrative remedies, it must be dismissed.

*Id.* (citing *Bryant*, 530 F.3d at 1373–74). "If the complaint is not subject to dismissal at the first step, where the plaintiff's allegations are assumed to be true, the court then proceeds to make specific findings in order to resolve the disputed factual issues related to exhaustion." *Id.* (citing *Bryant*, 530 F.3d at 1373–74, 1376). "Once the court makes findings on the disputed issues of fact, it then decides whether under those findings the prisoner has exhausted his available administrative remedies." *Id.* at 1083. "The defendants bear the burden of proving that the plaintiff has failed to exhaust." *Id.* at 1082 (citing *Jones v. Bock*, 549 U.S. 199 (2007)).

### III. FACTUAL ALLEGATIONS[3]

#### a. Plaintiff's Complaint

The Complaint sets forth the following factual allegations. At 10:40 a.m. on August 31, 2021, Plaintiff was attacked by another inmate. Doc. 1 at 3. Plaintiff's attacker injured his shoulder during the attack, and he requested medical attention over five hours later. *Id*. At that point, Defendant George "admitted to [Plaintiff] and the Captain that he had seen the attack and no contact was made by medical until 8:30 a.m." the following day. *Id*.

On September 1, 2021, Defendant Nixon asked Plaintiff to write a statement and Plaintiff refused. *Id*. Plaintiff told him that video evidence and eyewitness testimony would show "[his] attack, attacker, and [his] innocence." *Id*. Plaintiff "never even closed [his] fists[;] [he] ducked [his] head and held [his] hands up." *Id*. Nevertheless, Plaintiff was "held in lockdown, without a hearing, until" 3:43 a.m. on September 4, "well over the 72 hour investigation period." *Id*. at 4. During his hearing, he was not given the opportunity to enter a plea, his "right to remain silent was retaleated [sic] against," and he was convicted of fighting and sentenced to 30 days in isolation with two other inmates. *Id*. at 3–4.

While in isolation, on September 1, 2, 7, 9, 10, and 12, Plaintiff "was only allowed a 10-15 minute shower with no other free time." *Id*. at 3. On September 4 and 13, he was not offered a shower or free time. *Id*. Plaintiff believes he "may have been discriminated

---

[3] In the event it is necessary to resolve a factual dispute regarding exhaustion, the court may consider facts outside of the pleadings. *See Trias v. Fla. Dep't of Corr.*, 587 F. App'x 531, 535 (11th Cir. 2014) ("The [district] judge properly may consider facts outside of the pleadings to resolve a factual dispute as to exhaustion where doing so does not decide the merits, and the parties have a sufficient opportunity to develop the record.") (citation omitted). However, because the issue of exhaustion can be resolved based solely on the parties' pleadings in this case, the undersigned need not discuss the parties' evidentiary submissions.

against due to race, creed, color, or religion," as he was "the only white person involved throughout all of the[] alleged wrongdoing." *Id*. at 4.

### b. Defendants' Special Report

In their Special Report, Defendants allege that the Autauga Metro Jail has a grievance policy for inmates to express complaints. Doc. 27 at 2. When an inmate has a grievance, the inmate may utilize the inmate phone system to communicate with jail administrative staff. *Id*. Two phones for inmate use are present in each pod, and inmates have access to these phones for approximately twelve hours each day. *Id*. Inmates dial "9" and are connected to an operator, and the inmate communicates the grievance to the operator. *Id*. An email is then sent to jail administrative staff stating the grievance. *Id*. A grievance will be promptly investigated and answered by either the Warden or the Assistant Warden. *Id*. Grievances of an emergency nature may be made orally and are handled immediately. *Id*. No negative action will be taken against an inmate as a result of filing a grievance. *Id*. at 2–3. If an inmate is dissatisfied with the response to his grievance, he may appeal in writing to the Sheriff. *Id*. at 3. However, Plaintiff did not file any grievance regarding the allegations in his Complaint and, thus, failed to follow the grievance procedure in place at the Autauga Metro Jail. *Id*. at 3, 8.

### c. Plaintiff's Responses

In his responses to Defendants' Special Report, Plaintiff does not refute that the Jail has a grievance policy of which he was aware and that he did not file a grievance regarding the allegations in his Complaint. However, he states that his "right and access to a telephone to file a grievance was taken when [Defendant] Nixon convicted [him] of fighting and put

5

[him] in isolation for thirty days." Doc. 29 at 1. "On top of that, this incident took place at 10:40 a.m. [and] scheduled lockdown was at 11 am." *Id*. Plaintiff "was on lockdown, in [his] cell, until pill call the next morning when Officer Cloke wittnessed [sic] [his] injuries." *Id*. "From there[,] [Plaintiff] was taken to medical then to a holding cell." *Id*. Additionally, Plaintiff alleges that an appeal of his conviction does not go to the Sheriff; instead, it goes to the Jail Administrator, Defendant Nixon. *Id*.

## IV.   DISCUSSION

The Court must first consider the factual allegations in Defendants' Special Report and Plaintiff's responses and, if they conflict, take Plaintiff's version of the facts as true. *See Turner*, 541 F.3d at 1082. If, in that light, Defendants are entitled to have the Complaint dismissed for failure to exhaust administrative remedies, it must be dismissed. *Id*.

Defendants have alleged that the Autauga Metro Jail has an inmate grievance procedure in place that Plaintiff did not follow. If an inmate has a grievance, he may communicate that grievance to a telephone operator, and the grievance will be promptly investigated and answered by either the Warden or Assistant Warden. Grievances of an emergency nature may be made orally and will be handled immediately. If the inmate is dissatisfied with the response to his grievance, he may appeal in writing to the Sheriff. However, Plaintiff did not file any grievance regarding the allegations in his Complaint.

In response, Plaintiff does not dispute the existence of the Jail's inmate grievance procedure or that he failed to file a grievance pursuant to that procedure. Instead, he alleges that the procedure was unavailable to him because he was placed on scheduled lockdown twenty minutes after the alleged incident took place; once lockdown was over, he was taken

to medical and then to a holding cell; and he was then placed in isolation for thirty days, where he did not have access to a telephone. He further appears to believe that appealing his conviction for fighting would be futile, as the appeal is sent to Defendant Nixon.

Accepting Plaintiff's version of the facts as true, the undersigned nevertheless finds that the inmate grievance procedure was available to Plaintiff. The Supreme Court has recognized three circumstances in which an administrative remedy, although officially on the books, is considered unavailable to an inmate. *See Ross v. Blake*, 578 U.S. 632, 643 (2016). First, a remedy is unavailable when "it operates as a simple dead end" because prison officials are "unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, a remedy is unavailable if the grievance process is "so opaque that it becomes, practically speaking, incapable of use." *Id*. This occurs when "some mechanism exists to provide relief, but no ordinary prisoner can discern or navigate it." *Id.* at 644. Finally, a remedy is unavailable if "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*.

Even assuming that Plaintiff did not have access to a telephone in isolation, he wholly fails to allege that he asked to file a grievance at any point before or during that time and was denied; that he made or attempted to make an oral grievance as permitted in emergency situations; or that he made any effort to file a grievance after he emerged from isolation. *See Eduardo Perez v. Milton*, No. CV419-007, 2019 WL 2078793, at *1 (S.D. Ga. Feb. 21, 2019) (determining that, when a prisoner establishes "that he has made no effort to exhaust his available administrative remedies, the Court must dismiss the

7

Complaint") (citing *Okpala v. Drew*, 248 F. App'x 72 (11th Cir. 2007); *Cole v. Ellis*, No. 5:10-CV-316, 2010 WL 5564632, at *3 (N.D. Fla. Dec. 28, 2010); *Rashid v. Liberty Cnty. Jail*, No. CV 4:10-092, 2010 WL 3239241, at *1 n.1 (S.D. Ga. May 3, 2010)). Thus, because Plaintiff made no effort to file a grievance, Plaintiff's allegations fail to establish that he was hindered from taking part in the grievance process through machination, misrepresentation, or intimidation.

Additionally, to the extent Plaintiff alleges that appealing his conviction for fighting would be futile, as the appeal is sent to Defendant Nixon, "the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure." *Pierson v. Shelton*, No. 1:07-CV-451, 2007 WL 2609811, at *2 (M.D. Ala. Sept. 6, 2007) (citations omitted); *see also Mathews*, 2023 WL 8881170, at *2 (citing *Booth*, 532 U.S. at 741 n.6). Moreover, it appears based on the allegations that the procedure for appealing a conviction and the procedure for filing a grievance are two separate processes; in other words, even taking Plaintiff's allegations as true, those allegations do not conflict with Defendants' that grievances will be answered by the Warden or Assistant Warden and may then be appealed to the Sheriff.

Thus, taking Plaintiff's version of the facts as true, he failed to properly exhaust his available administrative remedies prior to filing this lawsuit. *See Woodford*, 548 U.S. at 83–84, 90–91. Accordingly, because such exhaustion is a mandatory precondition to suit, this case must be dismissed. *See Turner*, 541 F.3d at 1082; *Chandler*, 379 F.3d at 1286.

## V. CONCLUSION

Based on the foregoing, the undersigned RECOMMENDS that:

1. Defendants' Special Report (Doc. 27), which is construed as a motion to dismiss, be GRANTED; and

2. This case be DISMISSED for Plaintiff's failure to exhaust his administrative remedies prior to filing suit.

It is further ORDERED that, on or before **March 21, 2024**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made. Frivolous, conclusive, or general objections will not be considered. The parties are advised that this Recommendation is not a final order and, therefore, is not appealable.

Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except on grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1. *See Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982); *see also Bonner v. City of Prichard, Ala.*, 661 F.2d 1206 (11th Cir. 1981) (en banc).

DONE this 7th day of March, 2024.

/s/ Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE